**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Brandon Scott Terry,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-12-0888-PHX-FJM (JFM)<br><br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 27, 2012 (Doc. 1).  On September 12, 2012, Respondents filed their Response (Doc. 13).   Petitioner filed a Reply ("Affidavit in Response") on November 16, 2012 (Doc. 14).   Since, the parties have filed a Supplemental Answer (Doc. 20), a Supplemental Reply (Doc. 24), a Second Supplemental Answer (Doc. 28), and a Second Supplemental Reply (Doc. 31).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. FACTUAL BACKGROUND

In resolving Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

1

> …after an argument with the victim, Terry approached her with two
> knives as she sat in her car, repeatedly stabbed the car and slashed
> one tire. As he did so, Terry threatened to kill the victim.

(Exhibit I, Mem. Dec. at .)  (Exhibits to the Answer, Doc. 13, are referenced herein as "Exhibit ___"; exhibits to the first Supplemental Answer, Doc. 20, are referenced hereinafter as "Exhibit S1-___"; exhibits to the Second Supplemental Answer, Doc. 28, are referenced hereinafter as "Exhibit S2-___.")[1]

## B. PROCEEDINGS AT TRIAL

Petitioner was indicted in Maricopa County Superior Court on one count of aggravated assault.  (Exhibit B, Indictment.)  After completing a competency evaluation, the Court found Petitioner competent to stand trial, subject to his being medicated. Petitioner was ordered to take his medication. (Exhibit S2-D, M.E. 1/15/9.)   He proceeded to trial with counsel.)  (Exhibit C, M.E. 4/2/9; Exhibit S1-A, R.T. 4/2/09.)

The defense called Petitioner's girlfriend, Raycita Haycock to testify.  (Exhibit S1-A, R.T. 4/2/09 at 54 et seq.)  She related an incident prior to the assault on the victim, when the victim came to her home, banged and kicked on the door, and when Petitioner answered the door, she attempted to enter and called for Haycock to come outside. Haycock related that she threatened to, and then did call the police. (Id. at 57-59.)

On cross-examination, the prosecution referred to that call:

> Q. You tell us that you -- the night before which I guess is
> really the early morning hours, like 1:30 or so when Jessica was at
> your apartment, you told us that you that you called 911, right?
> A. Yes, I did.
> Q. And didn't you tell the 911 operator that --
> MS. MILLER: Objection, hearsay.
> MS. LECKRONE: Impeachment, your Honor.
> THE COURT: Could counsel approach, please.

---

[1] Respondents have appended as Exhibits the Petition (Doc. 1) and the service Order (Doc. 4).  (See Exhibits N and O.)  Local Civil Rule 7.1(d) provides: "No copy of a pleading, exhibit or minute entry which has been filed in a case shall be attached to the original of a subsequent pleading, motion or memorandum of points and authorities….If a party desires to call the Court's attention to anything contained in a previous pleading, motion or minute entry, the party shall do so by incorporation by reference."  Further, Respondents have ignored the Court's instructions on labeling exhibits to supplements. (See Order 8/29/12, Doc. 12.)

(Bench conference out of the hearing of the court reporter and jury.)

THE COURT: I will sustain the objection, but I will allow you to lay the foundation.

(*Id.* at 67.)  After further questioning, the prosecution returned to the issue:

Q.  Didn't you tell the 911 operator that you were asleep during all of this?

A.  No. I was asleep and I heard the bang on the door. That's when I got up. That's what I told the 911 operator because she -- when I was talking to that person, they didn't understand what I was trying to say because I was scared that she -- I didn't know what she wanted but she, you know, she was kicking in the door and banging on it. So I was scared.

\* \* \*

Q.  Let's get back to what you told the 911 operator. You told the operator that his temper gets bad. That's what you told the 911 operator, didn't you?

A.  I said that -- I didn't say it does. I said he might get mad. Like you know -- I said he might get mad. I mean anybody would get mad if someone's banging on their door.

Q.  But didn't you say specifically to the operator

MS. MILLER: Objection--

MS. LECKRONE: -- in talking about the defendant--

THE COURT: Overruled.

BY MS. LECKRONE:

Q.  Did you say specifically to the 911 operator when talking about the defendant that his temper gets bad?

MS. MILLER: Your Honor, I'm sorry. I'm going to object. May I make a record, please, regarding the hearsay objection?

THE COURT: I'll allow you to make a record when we're on a break, so just make a note.

MS. MILLER: Okay.

BY MS. LECKRONE:

Q.  Isn't that what you told the 911 operator?

A.  Yeah, but it's not --

Q.  That's all I need to know, ma'am.

(*Id.* at 68-70.)

Counsel subsequently put the objection on the record:

MS. MILLER: Okay. All right. Your Honor, it was a hearsay objection to the 911 operator, actually, because the 911 operator is not here. There is not -- it's an out of court statement used – I think because I can't remember exactly what the statements were or what the question was. But the line of questioning was basically in response to a 911 call. And since the 911 operator isn't here, we don't have an opportunity to cross examine them. I don't think there's an exception that was noted for the record. And so that would be my standing objection to any 911 statements.

THE COURT: Right. No. And I understand. But in this particular case the reason that the Court denied the objection is because the prosecutor had laid a foundation with regard to

3

testimony that she had given on the stand today during the trial. And laid a foundation on how that contradicted. And the question simply asked for, isn't it true that you made different statements to the 911 operator. And so I don't think that -- although I think you properly preserved your argument on appeal -- I just don't think that it was a violation of the hearsay rules. So there you go, you have a record.

(*Id.* at 91-92.)

Petitioner was convicted by the jury on the sole count.  (Exhibit C, M.E. 4/2/9; Exhibit D, Verdict.)[2]

Prior to sentencing, Petitioner admitted two prior convictions and that he committed the instant offense while on release.  (Exhibit K, PCR Pet. at 2.)  Petitioner was sentenced to 11.25 years in prison.  (Exhibit E, Sentence.)

**C.  PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a Notice of Appeal (Exhibit F), counsel was appointed, and Petitioner filed an Opening Brief (Exhibit G), raising the following issues for appeal:

(1) The trial court erred when it failed to admonish the victim for coaching witnesses while they testified.

(2) The trial court erred when it admitted testimony related to a conversation with a 911 operator who was not available for cross-examination.

The Arizona Court of Appeals rejected both issues, and affirmed Petitioner's conviction and sentence.  (Exhibit I, Mem. Dec.)  Petitioner did not seek further review. (Exhibit I, Order and Mandate.)

**D.  PROCEEDINGS ON POST-CONVICTION RELIEF**

Petitioner then filed a Notice of Post-Conviction Relief (Exhibit J).  Counsel was appointed and filed a Petition (Exhibit K) arguing that appellate counsel was ineffective for failing to argue on appeal that the trial court failed to properly advise Petitioner of his rights prior to accepting his admissions of prior felony convictions and his on release

---

[2] Inexplicably, the Sentence relates a plea of guilty.  (Exhibit E, Sentence at 1.)  The Arizona Court of Appeals relates a conviction at trial.  (Exhibit I, Order at 2.)

status, and that trial counsel was ineffective for failing to arrange a settlement conference.  The PCR court rejected both claims on the merits.  Petitioner did not seek further review.  (Exhibit A, Docket; Petition, Doc. 1 at 5.)

## E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 27, 2012 (Doc. 1).  Petitioner's Petition asserts the following six grounds for relief:

(1) a violation of his federal constitutional right to a fair trial when the trial court failed to find that the victim was "coaching" witnesses;

(2) violation of his federal constitutional right to a fair trial and to confront witnesses where the trial court permitted the prosecutor to impeach a defense witness with her prior statement to a 911 operator, although the operator was not available for cross-examination;

(3) violation of his federal due process and equal protection rights where the trial court failed to inform him of his rights under *Boykin v. Alabama*, 395 U.S. 238 (1969), at sentencing;

(4) he received ineffective assistance of counsel at trial, direct appeal, and post-conviction proceedings in violation of the Sixth Amendment;

(5) violation of his federal due process rights when his competency was not evaluated and he was not receiving medication for his mental illness; and

(6) violation of his federal due process rights in connection with jury selection where no black jurors served on his jury and the court failed to strike certain jurors for cause.

Petitioner further argues that any failure to pursue his state remedies was because his attorney refused to help him appeal to the Arizona Supreme Court and he filed a State Bar complaint against counsel, because he was advised that presentation to the Arizona Supreme Court was no longer required under *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir.

1999), and because proper assistance was not available at the prison. (Petition, Doc. 1 at 5.)

**Response** - On September 12, 2012 Respondents filed their Response ("Answer") (Doc. 13).   Respondents argue that Petitioner's state remedies were not properly exhausted, and his claims are now procedurally defaulted and barred from habeas review.

**Reply** - On November 16, 2012, Petitioner filed a Reply ("Affidavits in Support of Petitioners Writ of Habeas Corpus Claims") (Doc. 14).  Petitioner argues that he was advised by PCR counsel that he had "exhausted all of his remedies," and that such advice was ineffective assistance of counsel.

**Order for Supplements** – On December 17, 2012, the Court observed that "despite any deficiencies in Petitioner's presentation of the claim, the Arizona Court of Appeals actually addressed Petitioner's Confrontation Clause claim," and directed the parties to supplement their briefing to address the merits of Ground Two regarding the witness's statements to the 911 operator.  (Order 12/17/12, Doc. 15.)

**First Supplemental Answer** – On February 28, 2013, Respondents filed their first Supplemental Answer (Doc. 20) arguing that Petitioner's confrontation clause claim in Ground Two is without merit because the disputed testimony was not hearsay because it was not offered to prove the truth of the matter asserted, but to impeach the witness.

**First Supplemental Reply** – On March 22, 2013, Petitioner filed his Reply to Supplemental Answer (Doc. 24).  Petitioner argues the merits of a number of his claims. With regard to Ground Two, he complains that no transcript of the 911 recording was provided, the transcript was not identified as an exhibit, and the testimony was prejudicial.

**Order for Second Supplements** – On March 28, 2013, the Court observed that Respondents had elided Petitioner's claim of cause to excuse his procedural defaults based on ineffective assistance of PCR counsel, based on Petitioner's failure to exhaust his state remedies on that claim.  The Court also observed that in applying the recent

6

decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) (despite absence of constitutional violation, ineffective assistance of PCR counsel challenging ineffective assistance of trial counsel could be cause), the Ninth Circuit had recently held that such cause claims need not be exhausted.  *See Dickens v. Ryan*, 688 F.3d 1054, 1072 (9th Cir. 2012).

The Court also observed that in support of Petitioner's allegations of ineffective assistance of counsel in failing to argue competency, Petitioner argued his mental illness had been disclosed at sentencing.

The parties were directed to supplement their briefs to address Petitioner's assertion of ineffective assistance of PCR counsel as cause, and the competency issue.

**Second Supplemental Answer** – On May 15, 2013, Respondents filed their second Supplemental Answer (Doc. 28).  Respondents argue that despite *Martinez*, Petitioner's failure to exhaust his ineffective assistance of trial counsel claim is determinative.  Respondents argue that *Dickens* has been ordered reheard *en banc* and this is no longer good law.  Respondents argue that *Martinez* defeats the exhaustion requirement.

Respondents further argue that Petitioner fails to meet the requirements of *Martinez*, because Petitioner: (1) has failed to demonstrate that PCR counsel was ineffective; and (2) has failed to demonstrate that trial counsel was ineffective and therefore his ineffective assistance claims are not "substantial" within the meaning of *Martinez*.

Respondents again argue that Petitioner cannot rely upon ineffective assistance of his appellate counsel.

Finally, Respondents concede the disclosure of Petitioner's mental illness, but argue that counsel was not ineffective because he sought a Rule 11 competency evaluation, and Petitioner has filed to show that he was incompetent.

**Second Supplemental Reply** – On June 27, 2013, Petitioner filed his Reply to [second] Supplemental Answer (Doc. 31).  Petitioner asserts new theories of ineffective assistance of trial counsel (e.g. failure to adequately examine Officer Rayner and

Detective Udd, pursue deficiencies in descriptions of condition of vehicle¸ etc.) and argues the merits of his existing claims of ineffectiveness of trial counsel.

## III. APPLICATION OF LAW TO FACTS

### A. EXHAUSTION & PROCEDURAL DEFAULT

Respondents argue that Petitioner has failed to properly exhaust, and now has procedurally defaulted, his state remedies on his claims.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

**Proper Proceeding** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

Here, Petitioner's only foray to the Arizona Court of Appeals was on direct appeal. He did not seek review of his PCR proceeding by the appellate courts. Accordingly, his state remedies on any claims he might raise in the instant proceeding must have been presented in his direct appeal to now be properly exhausted.

**Fair Presentation** - To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

## 2.  Application to Petitioner's Claims

**Ground 1 – Coaching Witness** – In his Ground 1, Petitioner asserts a violation of his federal constitutional right to a fair trial when the trial court failed to find that the victim was "coaching" witnesses, and argues that the claim was presented to the Arizona Court of Appeals on direct appeal.  (Petition, Doc. 1 at 6.)  Petitioner asserted the facts of this claim in his first issue for review on direct appeal.  (Exhibit G, Open. Brief at 8-11.) However, Petitioner cited no constitutional or other federal grounds in support of this claim.  (*Id.*)  Petitioner cited two state cases, *State v. Dayhuff*, 158 P.3d 330, 342 (Kan. Ct. App. 2007) and *State v. Smith*, 679 S.E.2d 176, 179 (S.C. 2009), in support of this claim.  It is true that "a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  Here, however, neither of the cases cited by Petitioner were decided on federal grounds.

In *Dayhuff*, the defendant argued that his Due Process rights under the United States and Kansas constitutions had been violated by a child advocate's coaching

9

gestures during trial, citing two state cases to support the argument. The Kansas Court rejected that argument finding that neither cited case supported the contention.  Instead, the Kansas court resolved the issue under state law, applying an abuse of discretion standard on "whether the trial court abused its discretion in failing to declare a mistrial or to grant a new trial." *Dayhuff*, 158 P.3d at 341.

In *Smith*, no reference was made to any federal constitutional rights or laws.  679 S.E. 2d at 181-182.

Petitioner did describe the impact to the Arizona Court of Appeals as the denial of a fair trial.  That is not sufficient to present a constitutional claim.  "Even where a petitioner argues that an error deprived him of a 'fair trial' or the 'right to present a defense,' unless the petitioner clearly alerts the court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim."  *Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004).

Accordingly, Petitioner failed to fairly present to the Arizona Court of Appeals the federal claim he now asserts in his Ground One in these habeas proceedings. Therefore, Petitioner failed to properly exhaust his state remedies on this claim.

**Ground 2 – Unavailable 911 Operator** – In his Ground 2 for relief, Petitioner asserts the violation "of his federal constitutional right to a fair trial and to confront witnesses where the trial court permitted the prosecutor to impeach a defense witness with her prior statement to a 911 operator, although the operator was not available for cross-examination." (Serv. Order 5/17/12 at 2.)  (*See also* Petition, Doc. 1 at 7.)  Again, Petitioner raised the facts of this claim on direct appeal.  In doing so, he also specifically and repeatedly cited to *Crawford v. Washington*, 541 U.S. 36 (2004), a seminal case on Confrontation Clause issues. (Exhibit G, Opening Brief at 12.)

Nonetheless, Respondents argue that Petitioner' failed to fairly present his federal claim because his references to *Crawford* and the Confrontation Clause were "without elaboration as to their application" and did not extend to arguing the denial of a fair trial. (Answer, Doc. 13 at 12.)

The Ninth Circuit has "held that citation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).   Further, Petitioner analyzed not only the facts of *Crawford*, but noted Justice Scalia's reliance upon "the defendant's Confrontation Right." (Exhibit G, Open. Brief at 12-13.)

Moreover, despite any deficiencies in Petitioner's presentation of the claim, the Arizona Court of Appeals actually addressed Petitioner's Confrontation Clause claim. The court not only identified the Confrontation Clause, but quoted it, and specifically cited to paragraph 7 of *State v. Moore*, 203 Ariz. 515, 517 56 P.3d 1099, 1101 (App. 2002) which explicitly cited and discussed "The Confrontation Clause of the Sixth Amendment to the United States Constitution." (*See* Answer, Doc. 13, Exhibit I, Mem. Dec. at 7.)

A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).   Here, the Arizona Court of Appeals decided Petitioner claim, at least in part, on the basis of the Confrontation Clause of the federal Constitution.   That is sufficient to exhaust Petitioner's state remedies on this claim.

Respondents appear to divine some other claim of denial of a right to a fair trial, and argue that, despite the foregoing, it was not properly exhausted.   To be sure, Petitioner's Petition is lean in its description of this claim.   He does, however, reference his opening brief to the Arizona Court of Appeals.   (Petition, Doc. 1 at 7.)   That filing plainly laid out a confrontation clause claim. (Exhibit G at 12 *et seq*.)   The application of the Confrontation Clause of the Sixth Amendment to the states was based upon the fact that "confrontation was a fundamental right essential to a fair trial in a criminal prosecution." *Pointer v. Texas*, 380 U.S. 400, 404 (1965).   Petitioner proffers no facts or

arguments in support of his Ground 2 beyond the confrontation issues which are subsumed in his properly exhausted Confrontation Clause claim. Accordingly, the undersigned does not divine another claim, and Petitioner has not articulated any further claim in his replies.

Accordingly, Ground 2 was properly exhausted.

**Ground 3 – Advice of Rights under *Boykin*** – In his Ground 3 for relief, Petitioner argues his federal due process and equal protection rights were violated when the trial court failed to inform him at sentencing of his rights under *Boykin v. Alabama*, 395 U.S. 238 (1969) (advice of rights required prior to guilty plea), prior to accepting his admission of prior felony convictions.

Petitioner asserts that he presented this claim in his Rule 32 PCR petition. (Petition, Doc. 1 at 8.)  He acknowledges, however, that it was not presented to the Arizona Court of Appeals, and argues that this was caused by appellate counsel's failings. (*Id.*)

The purported failings of appellate counsel will be addressed hereinafter in connection with a "cause and prejudice" analysis. It is undisputed, however, that Petitioner failed to present to the Arizona Court of Appeals the federal claim he now asserts in his Ground Three in these habeas proceedings.

Therefore, Petitioner failed to properly exhaust his state remedies on this claim.

**Ground 4 – Ineffective Assistance** – For his Ground 4 for relief, Petitioner argues he received ineffective assistance of counsel at trial, direct appeal, and post-conviction proceedings in violation of the Sixth Amendment.   Again, Petitioner acknowledges that this claim was not presented to the Arizona Court of Appeals, and this time points to the fault of PCR counsel.  (Petition, Doc. 1 at 9.)

The purported failings of PCR counsel will be addressed hereinafter in connection with a "cause and prejudice" analysis. It is undisputed, however, that Petitioner failed to present to the Arizona Court of Appeals the federal claim he now asserts in these habeas proceedings.  Therefore, Petitioner failed to properly exhaust his state remedies on this

claim.

**Ground 5 – Competency Evaluation** -  For his Ground 5 for relief, Petitioner asserts the violation of his federal due process rights when his competency was not evaluated and he was not receiving medication for his mental illness.  Again, Petitioner acknowledges that this claim was not presented to the Arizona Court of Appeals, and this time points to the fault of appellate counsel, his lack of medication, and the lack of assistance from the prison library as cause.  (Petition, Doc. 1 at 9(A).)

The latter will be addressed hereinafter.  It is undisputed, however that, Petitioner failed to properly exhaust his state remedies on this claim.

**Ground 6 – Jury Selection** – For his Ground 6 for relief, Petitioner asserts the violation of his federal due process rights in connection with jury selection where no black jurors served on his jury and the court failed to strike certain jurors for cause. (Petition, Doc, 1 at 9(B).) Again, Petitioner acknowledges that this claim was not presented to the Arizona Court of Appeals, and this time points to the fault of trial counsel, and his lack of medication. (Petition, Doc. 1 at 9(A).)

The latter will be addressed hereinafter.  It is undisputed, however that, Petitioner failed to properly exhaust his state remedies on this claim.

**Summary re Exhaustion** – The only claim presented in the Petition that was properly exhausted is the confrontation clause claim raised in Ground Two.

## 3. Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S.

1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 13 at 9.)

**Remedies by Direct Appeal** – Petitioner filed a direct appeal.   Arizona law makes no provision for a successive direct appeal.  *See generally* Ariz.R.Crim.Proc. 31.1 *et seq*.

**Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."    Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding."  *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting  Ariz.R.Crim.P. 32.2, Comments).   For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right."  *Id*.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally."  *State v. Swoopes* 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.[3]   None

---

[3] Some other types of claims addressed by the Arizona Courts in resolving the type of waiver required include: ineffective assistance (waived by omission), *Stewart,* 202 Ariz. at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission), *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy

of Petitioner's unexhausted claims fit within those categories.

At best, Petitioner's claim in Ground 3 based upon the lack of notice of his rights under *Boykin* is related to the kinds of rights identified in *Stewart*.   However, even that claim would be time barred.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.   Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."   *See* *State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).   *See* Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).   Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.   The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> > (1) The newly discovered material facts were discovered after the trial.
> > (2) The defendant exercised due diligence in securing the newly discovered material facts.
> > (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the

---

(waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of interest (waived by omission), *State v. Westmiller*,  2008 WL 2651659 (App. 2008).

impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

 f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

 g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

 h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

 Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Here, Petitioner has long ago asserted the facts underlying a number of his unexhausted claims. He makes no argument that the facts underlying the others were not previously known to him.

 Petitioner has presented no facts to suggest that Paragraph (f) would apply. Petitioner's appeal was timely.   Further, Petitioner's defaults are not merely untimeliness, but also his failure to present his federal claims in earlier proceedings.

 Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims.

 Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's unexhausted claims are all now procedurally defaulted.

/ /

/ /

**4. Cause and Prejudice**

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner has raised as cause to excuse his procedural defaults the ineffective assistance of trial counsel, appellate counsel, and PCR counsel.  He has further pointed to his mental illness and the limited assistance provided by the prison library.

**Petitioner's Capabilities and Resources** - As to the latter, at the times that Petitioner's claims were procedurally defaulted, *i.e.* during his direct appeal and his PCR proceeding, he was represented by counsel.  Thus, he was not dependent upon his own capabilities, mental or legal, to present his claims.

**Ineffective Assistance of Trial and Appellate Counsel** – Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, a claim of ineffective assistance of counsel showing "cause" is itself subject to the exhaustion requirements. *Murray v. Carrier,* 477 U.S. 478, 492 (1986); *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Accordingly, "[t]o the extent that petitioner is alleging

17

ineffective assistance of appellate [or trial] counsel as cause for the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a separate claim in state court."   *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988). Petitioner has not presented a claim of ineffective assistance to the Arizona Court of Appeals.  Accordingly, none of Petitioner's claims of ineffectiveness of trial or appellate counsel can be looked to for cause to excuse his procedural defaults.

**Ineffective Assistance of PCR Counsel** - Ordinarily, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation.   *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998). Accordingly, where no constitutional right to an attorney exists (e.g. in a PCR proceeding), ineffective assistance will not amount to cause excusing the state procedural default.  *Id.*   Accordingly, Petitioners simple attacks on the performance of PCR counsel, e.g. that he wrongly advised Petitioner about the status of exhaustion,, would not suffice.

However, the Supreme Court has recently recognized two exceptions to this requirement, in *Maples*  and  *Martinez.*.

In *Maples v. Thomas*, 132 S.Ct. 912 (2012), the Supreme Court held that cause could be shown when post-conviction counsel was not merely negligent (and under the law of agency, that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies. But, *Maples* has no application here.  PCR counsel in Petitioner's PCR proceeding filed a PCR Petition (Exhibit K).  Thus, unlike the Petitioner in *Maples*, Petitioner was not abandoned by PCR counsel, and thus *Maples* does not apply.

In the second case,  *Martinez v. Schriro*, 132 S.Ct. 1309 (2012), the Court held that "where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that

1    proceeding was ineffective." *Id.* at 1320.

2          *Martinez* does apply.

3          <u>No Secondary Exhaustion Requirement</u> - Respondents argue that Petitioner

4    cannot now rely upon the ineffectiveness of PCR counsel because he failed to exhaust

5    his state remedies as to such a claim.[4] Respondents argue that permitting cause to be

6    shown by an unexhausted claim of ineffective assistance of PCR counsel would

7    undermine the very purpose of exhaustion, *i.e.* giving the state courts first crack at

8    resolving claims.  (2nd Suppl. Ans., Doc. 28 at 4.)

9          Indeed, where cause flows from some constitutional violation, the federal courts

10   have required exhaustion of state remedies as to that claim.  But that principle is based

11   upon the assumption of a constitutional violation.

12                The question whether there is cause for a procedural default does
                 not pose any occasion for applying the exhaustion doctrine when the
13                federal habeas court can adjudicate the question of cause-a question
                 of federal law-without deciding an independent and unexhausted
14                constitutional claim on the merits. But if a petitioner could raise his
                 ineffective assistance claim for the first time on federal habeas in
15                order to show cause for a procedural default, the federal habeas
                 court would find itself in the anomalous position of adjudicating an
16                unexhausted constitutional claim for which state court review might
                 still be available. The principle of comity that underlies the
17                exhaustion doctrine would be ill served by a rule that allowed a
                 federal district court "to upset a state court conviction without an
18                opportunity to the state courts to correct a constitutional violation,"
                 *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761
19                (1950), and that holds true whether an ineffective assistance claim is
                 asserted as cause for a procedural default or denominated as an
20                independent ground for habeas relief.

21   *Murray v. Carrier*, 477 U.S. 478, 489 (1986).

22          *Martinez*, however, did not rely upon a constitutional or other federal violation to

23   excuse a procedural default based on ineffectiveness of PCR counsel.  Rather, the Court

24   crafted an equitable ruling to address the quandary presented in jurisdictions which, like

25

26   _____

     [4] In ordering a supplemental response on this issue, the undersigned relied upon the
     Ninth Circuit's decision in *Dickens v. Ryan*, 688 F.3d 1054, 1072 (9th Cir. 2012) ("an
27   ineffective assistance of PCR counsel claim used to establish cause for a procedural
     default of a claim for ineffective assistance of sentencing counsel need not be exhausted
     itself").  Respondents point out that rehearing *en banc* of *Dickens* has been ordered, *see*
28   *Dickens v. Ryan*, 704 F.3d 816 (2013), and thus it holds no precedential value.

Arizona, require ineffective assistance of trial counsel claims to be brought in the first instance in a PCR proceeding, "to ensure that proper consideration was given to a substantial claim." *Martinez*, 132 S.Ct. at 1318. Indeed, the Ninth Circuit has clarified that *Martinez* did not create a constitutional claim. *Buenrostro v. U.S.*, 697 F.3d 1137, 1139 (9th Cir. 2012). Thus, there was no federal constitutional claim to be raised by Petitioner in the state courts. *See Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir. 1998) (no constitutional right to PCR counsel.)

Rather, in applying *Martinez*, the habeas court is faced with a situation "when the federal habeas court can adjudicate the question of cause-a question of federal law-without deciding an independent and unexhausted constitutional claim on the merits." *Murray*, 477 U.S. at 489. Such a situation, like claims of cause arising from things such as mental or physical illness, does not "pose any occasion for applying the exhaustion doctrine." *Id.* Similarly, Petitioner's failure to raise a claim of ineffective assistance of PCR counsel does not bar this Court from considering it as cause to excuse his failure to exhaust his state remedies on his claims of ineffective assistance of trial counsel.

<u>Standard under *Martinez*</u> - Here, Petitioner's Ground 4 includes a claim of ineffective assistance of trial counsel based upon: (1) the lack of pre-trial investigation; (2) lack of a Rule 11 evaluation, and failure to insure Petitioner was on his medications; (3) lack of pretrial motions; and (4) counsel refused to communicate with Petitioner and did not want to represent him. (Petition, Doc. 1 at 9.)

> …under Martinez, a petitioner may establish cause for procedural default of a trial IAC claim, where the state (like Arizona) required the petitioner to raise that claim in collateral proceedings, by demonstrating two things: (1) "counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)," and (2) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that that claim has some merit." *Martinez*, 132 S.Ct. at 1318.

*Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012)

Petitioner cannot meet either of the requirements under *Martinez* to establish that

1    PCR counsel was ineffective in failing to raise a claim of ineffective assistance of trial

2    counsel.

3         Standard on Ineffectiveness - Generally, claims of ineffective assistance of

4    counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).   In

5    order to prevail on such a claim, Petitioner must show:  (1) deficient performance -

6    counsel's representation fell below the objective standard for reasonableness; and (2)

7    prejudice - there is a reasonable probability that, but for counsel's unprofessional errors,

8    the result of the proceeding would have been different. *Id.* at  687-88.  Although the

9    petitioner must prove both elements, a court may reject his claim upon finding either that

10   counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.*

11   at 697.

12        There is a strong presumption counsel's conduct falls within the wide range of

13   reasonable professional assistance and that, under the circumstances, the challenged

14   action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*, 78 F.3d

15   1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996). The court should

16   "presume that the attorneys made reasonable judgments and decline to second guess

17   strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

18        An objective standard applies to proving such deficient performance, and requires

19   a petitioner to demonstrate that counsel's actions were "outside the wide range of

20   professionally competent assistance, and that the deficient performance prejudiced the

21   defense."   *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting

22   *Strickland*, 466 U.S. at 687-90).    The reasonableness of counsel's actions is judged

23   from counsel's perspective at the time of the alleged error in light of all the

24   circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S.

25   at 689.

26        "The law does not require counsel to raise every available nonfrivolous defense.

27   Counsel also is not required to have a tactical reason—above and beyond a reasonable

28   appraisal of a claim's dismal prospects for success—for recommending that a weak claim

21

1   be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations

2   omitted).  Moreover, it is clear that the failure to take futile action can never be deficient

3   performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*,

4   679 F.3d 1150, 1157 (9th Cir. 2012).  "The failure to raise a meritless legal argument

5   does not constitute ineffective assistance of counsel."  *Baumann v. United States*, 692

6   F.2d 565, 572 (9th Cir. 1982).

7       In evaluating the ineffectiveness of PCR counsel (and as part thereof, the

8   ineffectiveness of trial counsel) as a showing of "cause," this habeas Court is not

9   constrained by the limits on grants of habeas relief in 28 U.S.C. § 2254, *i.e.* state court

10  decisions contrary to or unreasonable application of Supreme Court law, etc..  *Cf.*

11  *Martinez*, 132 S.Ct. at 1320 (finding limits on habeas relief for ineffectiveness of PCR

12  counsel not applicable to cause and prejudice determination).

13      <u>Pre-Trial Work</u> – Petitioner alleges in his Ground Four that trial counsel was

14  ineffective because "1. there was no pre-trial investigation done…3. There were no

15  pretrial motions filed."  (Petition, Doc, 1 at 9.) Petitioner complains that there was no

16  forensic evidence submitted, no expert witnesses retained, no audio-visual evidence

17  presented.  (Supp. Reply, Doc. 24 at 2.)  However, Petitioner makes few suggestions

18  beyond these bare categories, what could or should have been presented.

19      Petitioner does suggest that an expert witness could have been called on the issue

20  of  "[t]he domestic violence attributes of revenge, retaliation and love triangle." (Supp.

21  Reply, Doc. 24 at 7.)  However, he makes no proffer of what that testimony might have

22  been.  Similarly, he asserts that an expert witness could "discuss un/medicated 'mental

23  illness'" (*id.*), and that "medical experts" could have addressed  the mental condition of

24  the victim and Petitioner.  (2nd Supp. Reply, Doc. 31 at 11.)  Again, however, this Court

25  is left to speculate about what that testimony would have been and whether it would have

26  been helpful to Petitioner.

27      He suggests that photographs and physical evidence should have been taken, *e.g.*

28  the vehicle and a weapon.  (2d Supp. Reply, Doc. 31 at 3,7.)  But he makes no indication

1    what they would have shown.  Indeed, this case was not based upon such physical

2    evidence, but eyewitness testimony and a defense of general denial of being present.

3    This Court is left to speculate about what would have been shown by such photographs,

4    forensic examinations, physical evidence, etc.

5        He complains that counsel did not "seek compulsory evidence of 'alleged

6    victim's' 'mental illness' and 'pattern of violence' then companionship after incident

7    'with accused.'" (2nd Supp. Reply, Doc. 31 at 8.)  However, he again fails to present that

8    evidence or even to detail what it was or that it existed.

9        A habeas petitioner may not leave a court to speculate what evidence the deficient

10   investigation would have discovered.  In order to prevail on an allegation that defense

11   counsel conducted an insufficient investigation resulting in ineffective assistance, the

12   petitioner must show specifically what that investigation would have produced.  For

13   example, a petitioner may not simply speculate about what a witness' testimony might

14   have been, but must adduce evidence to show what it would have been.  *Grisby v.*

15   *Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).  "[E]vidence about the testimony of a

16   putative witness must generally be presented in the form of actual testimony by the

17   witness or on affidavit. A defendant cannot simply state that the testimony would have

18   been favorable; self-serving speculation will not sustain an ineffective assistance claim."

19   *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

20       Moreover, as Respondents point out, during a pretrial conference on March 23,

21   2009, trial counsel informed the trial court: (i) the defense witness, Raycita Haycock, had

22   been interviewed; (ii) counsel had interviewed one of the three officers that would be

23   called to testify; and (iii) the other two interviews were scheduled for that week. (Exhibit

24   S2-A, R.T. 3/23/09 at 6.) Thus, at best, Petitioner has shown a dispute over counsel's

25   tactical decision on what investigations to undertake.

26       Similarly, Petitioner cannot simply assert that counsel failed to file pretrial

27   motions without suggesting what motions should have been filed.  The constitution does

28   not require counsel to manufacture a defense where none exists.  *See U.S. v. Hamilton*,

792 F.2d 837 (9th Cir. 1986).

Petitioner's allegations that trial counsel failed to adequately investigate or to file pretrial motions are conclusory, and without merit.   Accordingly, this claim of ineffectiveness is not substantial.

Competency – Petitioner argues that trial counsel was ineffective because "there was no Criminal Rule 11 Evaluation (on mental health issues) done" and "trial attorney did not check to see if Petitioner was on his mental health medication."   The record in this case is replete with indicia that Petitioner suffers from schizophrenia, bi-polar personality, and manic depression.   (*See. e.g.* Motion to Appoint Counsel, Doc. 18 at 2; Supplemental Reply, Doc. 24 at 2, 7; etc.)

However, counsel filed a motion for a competency evaluation (Exhibit S2-B), which was granted (Exhibit S2-C, M.E. 12/19/08).  Petitioner was found competent upon medication and was ordered to continue taking his medications.  (Exhibit S2-D, M.E. 1/15/9.)

Petitioner proffers nothing to show that he was, in fact, incompetent or off his medication at any relevant time.   The pre-trial record shows that counsel had taken some steps to insure that he was taking his medications.

> I will also note for the record that Mr. Terry was in Rule 11 court. He was found to be competent, medication-dependent. I don't know if he's taking his medication.
> At some point in time I believe that medication was not made available to him. I contacted the Magellan crisis hotline and dealt with that issue, and I believe at this time that he is medicated, although -- he's pulling up his sleeve.
> He has -- I'm not going to disclose any confidential information to you with regard to his mental health issues or his medical issues. If Mr. Terry wishes to do that, I don't have a problem with it because perhaps that will help you make a determination if I should remain on this case.

(Exhibit S2-A, R.T. 3/23/9 at 7-8.)   Petitioner proffered nothing further at the time to show that he was not taking his medication.

Petitioner complains that the medication was mandated, and suggests that counsel should have followed up to make sure that medical personnel had fulfilled their

obligation to "track and watch swallow." (2nd Supp. Reply, Doc. 31 at 12.)  Prior to his conviction, Petitioner had been on release (Exhibit S2-E, R.T. 5/8/09 at 19-20; Exhibit A, Docket at 10/20/08 Entry), and thus medical personnel would not have been able to track his medications.  Petitioner complains that trial counsel did not continue after trial (when he was incarcerated) to "check and see if Petitioner was on his medication" and stated that at sentencing "she did not know if Petitioner had been on or taking his mental health medication."  (Petition, Doc. 1 at 9.) However, the record at sentencing does not make any suggestion that Petitioner had fallen off his medication.  During his allocution, Petitioner did raise his mental condition as a mitigating factor, but did not suggest he was not presently taking his medication or was incompetent at any time during the proceedings:

> I got a mental issue where I'm schizophrenia, bipolar, manic attacks, seizures, and none of it is -- like, none of that plays a part in anything. It is just 11.5 [years in prison] -- I mean, I - -

(Exhibit S2-E, R.T. 5/8/09 at 14.)   Petitioner presents nothing now to show that jail officials were not providing him with his medication.

Here, there is some bare modicum of evidence on the record to suggest that Petitioner may not have been taking his medication before or during trial, *i.e.* his showing his arm to counsel while counsel was representing he has on his medication. What is missing is any representation by Petitioner that he was in fact not taking his medication.  Even if now represented by Petitioner, the record offers nothing more than an inference, and Petitioner makes no affirmative showing that he was not on his medication or that he had been rendered incompetent.  The bare inference is insufficient to meet Petitioner's burden of showing deficient performance by trial counsel.

This claim of ineffective assistance has no merit and is therefore not substantial.

.   <u>Communication</u> – Petitioner argues in Ground Four that trial counsel was ineffective because "she refused to communicate with Petitioner...[and] did not want to represent Petitioner."  (Petition, Doc. 1 at 9.)

The Sixth Amendment does not guarantee a "meaningful relationship" between a

client and his attorney. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).   However, forcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel. *Brown*, 424 F.2d at 1170. An irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel. *Schell*, 281 F.3d at 1026. Disagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication. *Id.*

  Here, the record reflects that trial counsel did communicate with Petitioner:

> MS. MILLER: Okay. Your Honor, since the beginning of the case we have had a difficult relationship, but I have tried to, of course, be professional and I have kept Mr. Terry advised of everything that's been going on in this case to the point where I sent him a risk of trial letter.
>
>   I've interviewed one of the three officers that will be called to testify; those two other interviews are scheduled for this week.
>
>   When I received the plea agreement from the prosecutor, it was on March 10th. I attempted to obtain a settlement conference so Mr. Terry could have the benefit of hearing from someone other than myself what the facts of the case were and what he was facing, because it seems that every time I tell him, you know, what he's facing and what I've learned in the interviews, and my biggest concern is risk of trial, he doesn't like what I have to say, and that's typical.
>
>   I don't -- you know, I don't have a problem with somebody disagreeing with the facts, but what Mr. Terry doesn't understand is these are jury - - these are jury questions, and there's nothing that I can do to get this case dismissed on a legal basis, and he does not like hearing that.
>
>   I think I've thoroughly reviewed this case with Mr. Terry. I've thoroughly reviewed what he's facing if he goes to trial and loses.

(Exhibit S2-A, R.T. 3/23/09 at 6-7.)   Petitioner does not suggest what more counsel could or should have done to maintain communications.

  "Even if there was no effective communication, the petitioner has not made any showing of even the possibility of prejudice, a prerequisite for a grant of habeas based on ineffective assistance of counsel."   *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

Accordingly, this claim of ineffectiveness is without merit and is therefore not substantial.

**Analysis of PCR Counsel** – The other prong of the *Martinez* analysis asks whether, in light of the purported ineffectiveness of trial counsel, PCR counsel was ineffective.   Only if PCR counsel was operating "outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 687-90, in failing to raise trial counsel's ineffectiveness, can Petitioner's procedural default be excused.

Because the undersigned has concluded that none of Petitioner's claims of ineffective assistance of trial counsel are substantial, this prong need not be reached.

However, even if it were presumed that the underlying claims had some merit and were thus "substantial," none of them have been shown to be of such merit that PCR counsel would have been performing deficiently in failing to raise the claims.   Nor has Petitioner shown sufficient merit to the claims such that the undersigned could find that the outcome of the PCR proceeding would have been different, had PCR counsel pursued the claims of ineffectiveness of trial counsel presented in Petitioner's Ground Four.

Therefore, the undersigned concludes that Petitioner has failed to show ineffective assistance of PCR counsel to establish cause to excuse his procedural default on these claims.

**Prejudice** -   Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

**5. Actual Innocence**

The standard for "cause and prejudice" is one of discretion intended to be flexible

1  and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v.*

2  *Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).   Accordingly,

3  failure to establish cause may be excused "in an extraordinary case, where a

4  constitutional violation has probably resulted in the conviction of one who is actually

5  innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).   Although

6  not explicitly limited to actual innocence claims, the Supreme Court has not yet

7  recognized a "miscarriage of justice" exception to exhaustion outside of actual

8  innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.*, §26.4 at

9  1229, n. 6 (4th ed. 2002 Cumm. Supp.).   The Ninth Circuit has expressly limited it to

10 claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

11        Here, Petitioner makes various references to his "actual innocence."   However,

12 Petitioner fails to make the showing necessary to establish his innocence.

13        A petitioner asserting his actual innocence of the underlying crime must show "it

14 is more likely than not that no reasonable juror would have convicted him in the light of

15 the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327

16 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not

17 sufficient.   Rather, the petitioner must show that no reasonable juror would have found

18 the defendant guilty.  *Id*. at 329.   This standard is referred to as the "Schlup gateway."

19 *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

20        Here, Petitioner proffers no new evidence at all.   At most, he offers speculation

21 about expert testimony, forensic evidence, photographs.   But he fails to present one

22 scintilla of actual new evidence.

23

24 **6. Summary**

25        Petitioner failed to properly exhaust his state remedies on the claims in his

26 Grounds One and Three through Six.   He has now procedurally defaulted on those

27 remedies, and has failed to show cause and prejudice or actual innocence to excuse the

28 default.  Accordingly, the grounds must be dismissed with prejudice.

1    Petitioner has exhausted his state remedies on his Ground Two.

2

3    **B.  MERITS OF GROUND TWO: CONFRONTATION CLAUSE**

4         In his Ground Two, Petitioner argues that he was denied a fair trial in violation of

5    the Confrontation Clause when the trial court allowed the defense witness, Petitioner's

6    girlfriend, to be impeached with her statements to the 911 operator, when the 911

7    operator was not called or made available for cross-examination.  (Petition, Doc. 1 at 7.)

8         Respondents argue that the Arizona Court of Appeals correctly rejected this claim

9    on the basis that the statements to the 911 operator were offered for impeachment as

10   prior inconsistent statements, and thus were not hearsay subject to the Confrontation

11   Clause.  (Supp. Ans., Doc. 20 at 7 *et seq.*)

12        The Supreme Court has long held that "the Confrontation Clause does not require

13   excluding from evidence the prior statements of a witness who concedes making the

14   statements, and who may be asked to defend or otherwise explain the inconsistency

15   between his prior and his present version of the events in question, thus opening himself

16   to full cross-examination at trial as to both stories."  *California v. Green*, 399 U.S. 149,

17   164 (1970).  "For where the declarant is not absent, but is present to testify and to submit

18   to cross-examination, our cases, if anything, support the conclusion that the admission of

19   his out-of-court statements does not create a confrontation problem."  *Id.* at 162.  That

20   principle was unaffected by the sea change in Confrontation Clause law in *Crawford v.*

21   *Washington*.  "Finally, we reiterate that, when the declarant appears for cross-

22   examination at trial, the Confrontation Clause places no constraints at all on the use of

23   his prior testimonial statements."  *Crawford v. Washington*, 541 U.S. 36, 59 (2004)

24   (citing *Green*).

25        Petitioner replies, notwithstanding, that the 911 operator transcripts were not

26   provided and properly authenticated.  (Supp. Reply, Doc. 24 at 4.)  That is beside the

27   point - - the testimony offered at trial was not by some stranger to the conversation

28   quoting a transcript, nor was it even testimony by the 911 operator.  It was the testimony

of the declarant, Petitioner's girlfriend, as to her own statements.   She was fully competent to testify as to those statements with or without a transcript.   Had the prosecution misrepresented her statements, she could have denied having made them, and was present on the stand, subject to confrontation, to do so.   The witness having testified as to her own statements, no further evidence, whether from the 911 operator or from a transcript, was necessary to comply with the Confrontation Clause.

As noted by the Arizona Court of Appeals in rejecting this claim:

> Terry was confronted with all the witnesses who provided testimony or other evidence against him.   The 9-1-1 operator was not a witness against Terry, so the operator's alleged unavailability for trial was irrelevant.

(Exhibit I, Mem. Dec. 6/24/10 at 7.)

Petitioner's Ground Two is without merit and must be denied.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.   The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.   Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds and in part on the merits. To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling." To the extent that Petitioner's claims are rejected on the merits, under the reasoning set for the herein, the undersigned finds that "reasonable jurists" could not "find the district court's assessment of the constitutional claims debatable or wrong."

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds One and Three through Six of the Petitioner's Petition for Writ of Habeas Corpus, filed April 27, 2012 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder, including Ground Two (Confrontation Clause), of the Petitioner's Petition for Writ of Habeas Corpus, filed April 27, 2012 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report and Recommendation is adopted in the District Court's judgment, a Certificate of

1   Appealability be **DENIED**.

2

3   ## VI. EFFECT OF RECOMMENDATION

4   This recommendation is not an order that is immediately appealable to the Ninth

5   Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules*

6   *of Appellate Procedure*, should not be filed until entry of the district court's judgment.

7   However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties

8   shall have fourteen (14) days from the date of service of a copy of this recommendation

9   within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules

10  Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days

11  within which to file a response to the objections.  Failure to timely file objections to any

12  findings or recommendations of the Magistrate Judge will be considered a waiver of a

13  party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*,

14  328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's

15  right to appellate review of the findings of fact in an order or judgment entered pursuant

16  to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-

17  47 (9th Cir. 2007).

18  Dated: July 15, 2013

James F. Metcalf
United States Magistrate Judge

19  12-0888r RR 12 12 11 on HC.docx

20

21

22

23

24

25

26

27

28